**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                                           3:12-cr-161-J-99MMH-MCR

ALAN CHUNG DAM
_____

# REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Defendant, Jonathan Armando Cardona's[2]

Motion to Suppress (Doc. 28) filed October 19, 2012. The Government filed a response

in opposition to the Motion on November 6, 2012 (Doc. 36).  An evidentiary hearing was

held before the undersigned on November 8, 2012.

## I.  Evidence Presented at the Hearing

During the hearing, the Government presented the video of the traffic stop at

issue in this case.  The video showed a police car, being driven by Sergeant Sharpe,

following a red vehicle.  At approximately two minutes and thirty seconds into the video,

the red car pulled over.  Sergeant Sharpe approached the passenger window of the car

and informed Defendant, who was driving the vehicle, why he was being pulled over

---

[1] Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation.  Failure to do so shall bar the party from a de novo determination by a district judge of an issue covered herein and from attacking factual findings on appeal.  See 28 U.S.C. §636(b)(1) and Local Rule 6.02(a), United States District Court for the Middle District of Florida.

[2] Defendant, Alan Chung Dam, adopted the Motion to Suppress.  As Defendant Cardona entered a plea on November 7, 2012 and withdrew the Motion, only Defendant Dam seeks to suppress any evidence at this time.

and asked for identification and the vehicle's registration.[3]  Sergeant Sharpe asked Defendant to step out of the vehicle and began asking him questions such as from where he was traveling and his destination.  Defendant responded that they were coming from Miami, where they had attended a concert.  While Defendant was being questioned, a second officer appeared on the scene.  Sergeant Sharpe returned to his vehicle and the second officer remained outside speaking with Defendant.  At about six minutes into the video, Sergeant Sharpe approached the passenger side of the vehicle and asked Mr. Cardona the same questions he posed to Defendant.  While it is not possible to hear Mr. Cardona's responses, it is clear he told Sergeant Sharpe he attended some basketball games.  After his conversation with Cardona, Sergeant Sharpe asked Defendant if they went anywhere other than Miami.  Defendant stated they also went to Deltona and Orlando.  When asked what they did there, Defendant responded they just visited with a friend.

Sergeant Sharpe then returned to his vehicle and was informed by dispatch that there was a warrant for Cardona's arrest.  At nearly nine minutes into the video, Sergeant Sharpe exited his vehicle again and informed Defendant that he would simply give him a warning, rather than a ticket.  Sergeant Sharpe asked Defendant if he had ever been in trouble or arrested before.  Defendant responded that he had only received a traffic citation.  Defendant then told the officers about plans he had to attend the Super Bowl.

---

[3]  Defendant Cardona was in the passenger seat.

While Sergeant Sharpe was preparing the warning, Defendant joked about his height.  Sergeant Sharpe asked Defendant if he attended any basketball games while he was in either Miami or Orlando.  Defendant said that no, they tried, but it did not work out.  Sergeant Sharpe then asked Defendant if there was anything illegal in the car and Defendant responded there was not.  At approximately sixteen minutes into the video, Sergeant Sharpe presented the warning to Defendant, asked him to sign it, and returned his license.  At sixteen minutes and forty-five seconds, Defendant began walking toward the driver's door.  Before he was able to open the door, Sergeant Sharpe asked if he could speak to Defendant again.  Defendant turned around and returned to the back of the red vehicle and the following conversation ensued:

> Sharpe: I'm not holding you up, though, am I?
> Defendant: I'm trying to get . . .
> Sharpe: OK.
> Defendant: . . . home as soon as possible.
> Sharpe: You don't have anything illegal in the vehicle?
> Defendant: No, sir.
> Sharpe: No money?
> Defendant: No, sir.
> Sharpe: No cocaine?
> Defendant: No, sir.
> Sharpe: No marijuana?
> Defendant: No, sir.
> Sharpe: No illegal drugs?
> Defendant: No, sir.
> Sharpe: Explosives or anything like that?
> Defendant: No, sir.
> Sharpe: Alright. Do you care if I search the vehicle?
> Defendant: Huh?
> Sharpe: Do you care if I search the vehicle?
> Defendant: I'm talking about . . . I really don't care.
> Sharpe: You don't care?
> Defendant: No, sir.

This conversation ended at seventeen minutes and fourteen seconds into the video. Sergeant Sharpe then approached the passenger window and informed Cardona that Defendant had consented to a search of the vehicle and asked Cardona to step out.  He also informed Cardona that there was a warrant for his arrest and performed a pat down.  Thereafter, at approximately eighteen minutes into the video, Sergeant Sharpe began the search of the vehicle.  During the search, the officers found a black suitcase in the trunk.  Inside the suitcase, the officers found a plastic storage container with a crystallized substance inside.  Subsequent testing revealed the substance to be methamphetamine.

Defendant now seeks to suppress the evidence seized from the vehicle as well as any statements he made to law enforcement.

## II.  Argument

Defendant seeks to suppress evidence seized from the vehicle and any statements he made on the grounds that: (1) even if the traffic stop was lawful at its inception, the detention became unlawful when it was extended past the time necessary for issuing the warning, (2) Defendant did not voluntarily consent to the search of the vehicle, and (3) Defendant did not have the authority to consent to the search of the vehicle.  The Court will address each of these arguments.

A.    **Was the Detention Unreasonable?**

Traffic stops are seizures within the meaning of the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391 (1979).  Because traffic stops are similar to investigative detentions, courts analyze their legality under the standards set out in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868 (1968).  Under Terry, an officer's

actions during a traffic stop must be reasonably related in scope to the circumstances justifying the stop.  See e.g., United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001).  Further, the stop must be limited in duration "to the time necessary to effectuate the purpose of the stop."  Id. (citing United States v. Pruitt, 174 F.3d 1215, 1219 (11th Cir. 1999)).  Here, Defendant does not argue that the stop itself was improper.  Instead, Defendant takes the position that after he was issued the warning and his driver's license was returned, Sergeant Sharpe violated his constitutional rights by calling him back and continuing to question him.  Additionally, although not argued in the Motion, at the hearing, counsel for Defendant took the position that the questions asked by the officers were unnecessary.  Accordingly, Defendant takes issue with both the scope and length of the stop.

As for the scope, counsel for Defendant argued during the hearing that Sergeant Sharpe asked questions such as "Where are you coming from?" and "What did you do there?" which were unnecessary and were simply an attempt to prolong the detention. The Court does not agree.  "[A]s part of an officer's reasonable investigation during a traffic stop an officer may ask questions regarding the driver's destination and purpose." United States v. Artiles-Martin, No. 5:08-cr-14, 2008 WL 2600787, *8 (M.D. Fla. June 30, 2008) (citing  United States v. Johnson, 58 F.3d 356, 357 (8th Cir. 1995)).

Further, to the extent Defendant argues Sergeant Sharpe's questions regarding whether there was any contraband located inside the vehicle, were unnecessary, again, the Court does not agree.  The Eleventh Circuit has recently determined that "unrelated questions posed during a valid Terry stop do not create a Fourth Amendment problem unless they 'measurably extend the duration of the stop.'"  United States v. Griffin, 696

F.3d 1354[4] (11th Cir. 2012).  As such, the Court must determine whether the time it took

Sergeant Sharpe to ask Defendant about contraband and for Defendant to answer

"'measurably' extended or prolonged the duration of the stop so as to make it

unreasonable under the Fourth Amendment."  Griffin, 696 F.3d 1354.  To answer this

question, the Court should "not simply look at the 'interval of prolongation in isolation,'

but rather assess the length of the stop as a whole, including any extension of the

encounter, by undertaking a fact-bound, context-dependent analysis of all of the

circumstances concerning the stop and the unrelated questions."  Id.

        Here, there is no contention that the questions regarding contraband measurably

extended the duration of the stop.  They merely added seconds to the stop and the

entire length of the stop until the time Defendant consented to the search was less than

fifteen minutes.  See United States v. Chatman, 342 F.App'x. 555, 556-58 (11th Cir.

2009) (finding that officer's question whether there was anything illegal in vehicle, which

was unrelated to traffic stop for violation of seatbelt law, did not exceed scope of traffic

stop because the question did not unreasonably prolong the duration of the stop);

United States v. Hernandez, 418 F.3d 1206, 1209 n. 3 (11th Cir. 2005) (explaining that

"[w]hen an officer is, for instance, looking at a driver's license . . ., he can lawfully at

about the same time also ask questions-even questions not strictly related to the traffic

stop" as long as such questioning does not unreasonably extend the duration of the

stop); Purcell, 236 F.3d at 1279 ("Fourteen minutes is not an unreasonable amount of

---

        [4]  No page numbers were available for this citation at the time this Report and
Recommendation was prepared.

time for a traffic stop.  We have approved traffic stops of much longer duration.").

Accordingly, the undersigned finds Sergeant Sharpe did not exceed the scope of the

traffic stop by asking whether there was anything illegal in the vehicle.

As for the length of the stop, from the time Defendant was first pulled over to the

time he was issued the warning, approximately fourteen minutes elapsed.  "[A]n

investigative detention must be temporary and last no longer than is necessary to

effectuate the purpose of the stop."  Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct.

1319, 1325 (1983).  While there is "no hard-and-fast time limit" for a permissible Terry

stop, in order to determine whether a detention is too long to be justified as an

investigative stop, the Court must "examine whether the police diligently pursued a

means of investigation that was likely to confirm or dispel their suspicions quickly,

during which time it was necessary to detain the defendant."  United States v. Sharpe,

470 U.S. 675, 686, 105 S.Ct. 1568, 1575 (1985).

The Government takes the position that a fourteen minute detention is certainly

reasonable.  Counsel for Defendant argued that there were times on the video when the

officers appeared to be standing on the side of the road doing nothing but talking to

Defendant.  The Court has reviewed the video and believes that the time counsel is

referring to was when Sergeant Sharpe was filling out the warning.[5]  It appeared to the

Court that the officers were diligently pursuing a means of investigation that was likely to

---

[5] During the hearing, counsel for Defendant also argued Sergeant Sharpe was intentionally prolonging the detention in order for other officers to arrive.  She indicated the video showed three officers during the detention.  The Court was only able to observe two officers during the detention prior to Defendant consenting to the search.

confirm or dispel their suspicions quickly.  As such, the undersigned does not believe the duration of the detention was unreasonable.

The Court also disagrees with Defendant's argument that the detention after the warning was issued was unreasonable.  As the Government notes, that detention lasted approximately twenty-three seconds before Defendant consented to the search of the vehicle.  Once Defendant consented to the search, "the clock re-started for purposes of evaluating the reasonableness of the duration of the intrusion."  Hernandez, 418 F.3d at 1210.  As noted above, the Eleventh Circuit has held that "unrelated questions posed during a valid Terry stop do not create a Fourth Amendment problem unless they 'measurably extend the duration of the stop.'"  Griffin, 696 F.3d 1354.  The undersigned recognizes that in the Griffin case, the officer had not yet completed his investigation whereas, in the instant case, Sergeant Sharpe had completed the purpose of the traffic stop.  However, as one court has noted, "whether the detention is lengthened because of questions which occur before or after the license is returned would seem to have little relevance to the reasonableness of the seizure, particularly if probable cause supports the traffic stop."  United States v. Osborne, No. 11-40004-01-RDR, 2011 WL 1656496, *4 (D. Kan. May 2, 2011).  Both the Osborne court and the Eleventh Circuit in Griffin cited the case of United States v. Childs, 277 F.3d 947, 953–54 (7th Cir. 2002) (en banc), for the proposition that "questions that do not increase the length of detention (or that extend it by only a brief time) do not make the custody itself unreasonable."  Griffin, 696 F.3d 1354; Osborne, 2011 WL 1656496, at *4.  In Childs, the court held that in traffic stops supported by probable cause, the occupants of a vehicle have no:

> right to be released the instant the steps to check license,
> registration, and outstanding warrants, and to write a ticket,
> had been completed . . .  [T]he fourth amendment does not
> require the release of a person arrested on probable cause
> at the earliest moment that step can be accomplished.  What
> the Constitution requires is that the entire process remain
> reasonable.

Osborne, 2012 WL 4496817, at *4 (quoting Childs, 277 F.3d at 953–54).  Here, the

twenty-three second delay after Defendant received the warning did not cause the

entire process to become unreasonable.  Accordingly, the questions posed to

Defendant after he received the warning did not violate his Fourth Amendment rights.

In any event, a law enforcement officer may lengthen a "detention for further

questioning beyond that related to the initial stop" in two instances.  United States v.

Ramirez, 476 F.3d 1231, 1237 (11th Cir. 2007).  First, if the officer has "'an objectively

reasonable and articulable suspicion that illegal activity has occurred or is occurring,'"

he may detain the driver for questioning unrelated to the initial stop.  Id. (quoting Pruitt,

174 F.3d at 1221).  "Second, further questioning unrelated to the initial stop is

permissible if the initial detention has become a consensual encounter."  Id. (quoting

Pruitt, 174 F.3d at 1220).  The Government argues the brief detention after the warning

was issued became a consensual encounter.

In Ramirez, the Eleventh Circuit noted that "[t]here is no bright-line 'litmus test' for

whether a traffic stop is a seizure or is a consensual encounter."  Ramirez, 476 F.3d at

1240 (quoting United States v. White, 81 F.3d 775, 779 (8th Cir. 1996)).  Instead, the

court determined it was necessary:

> to examine the "totality of the circumstances" in each case,
> weighing a range of factors, such as whether there is any

> coerciveness on the part of the police, whether the exchange
> is cooperative in nature, and whether the defendant had
> everything he reasonably required to proceed on his journey.

Id. (internal citations omitted).  The court determined that the "ultimate inquiry" remained whether "'a reasonable person would feel free to terminate the encounter.'" Id. (quoting United States v. Drayton, 536 U.S. 194, 201, 122 S.Ct. 2105, 2110 (2002)).

Here, the undersigned finds a reasonable person in Defendant's position would have felt free to terminate the encounter.  Law enforcement returned both Defendant's and Cardona's driver's licenses; they also returned the vehicle registration to Cardona.  Sergeant Sharpe did not utilize any coercion to get Defendant to answer his questions and the exchange was cooperative in nature.  Defendant takes issue with the fact that when Sergeant Sharpe asked Defendant if he was holding Defendant up, the officer ignored Defendant's response that he was trying to get home as soon as possible.  While Defendant's response may have indicated his preference for the questioning to be brief, it did not indicate Defendant was not willing to cooperate or that Defendant did not feel free to decline to answer the questions.  There was nothing in the conduct or demeanor of the officers which would have given Defendant the impression that he was not free to end the conversation and be on his way.  Thus, the undersigned finds Sergeant Sharpe did not improperly compel Defendant to stay and answer further questions after he returned his driver's license and gave him the warning.  Accordingly, the period of time after the warning was issued was a consensual encounter and therefore, no violation of the Fourth Amendment occurred.

**B.    Was Defendant's Consent Voluntary?**

Defendant also argues that his consent to the search of the vehicle was not voluntary.  "'When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given.'" United States v. Smith, 543 F.2d 1141, 1145 (5th Cir. 1976)[6], cert. denied, 429 U.S. 1110, 97 S.Ct. 1147 (1977) (quoting Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792 (1968)).  "Voluntariness 'is a question of fact to be determined from the totality of all the circumstances.'" Id. (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 2048 (1973)).

In determining whether consent was voluntary, courts consider several factors, such as: the presence of coercive police procedures, the extent of the person's cooperation with the officers, the person's awareness of his right to refuse consent, the person's education and intelligence, and the person's belief that no incriminating evidence will be found.  Purcell, 236 F.3d at 1281.  The undersigned will examine each of the above factors to determine whether Defendant's consent was voluntary.

Turning to the first factor, the presence of coercive police procedures, Defendant takes the position that Sergeant Sharpe "aggressively badgered [Defendant] into staying and acquiescing to search by ignoring [Defendant's] protestation that he was 'trying to get home as soon as possible,' and rapidly firing questions at [Defendant]

---

[6]  In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

about contraband that he already had answered." (Doc. 28, p.8). After reviewing the video, the Court does not find the presence of any coercion. Sergeant Sharpe asked Defendant if he could speak with him for a second and Defendant responded in the affirmative. Sergeant Sharpe's manner of questioning Defendant was polite and professional. There were none of the signature signs of coercion, such as a display of force, authority, or intimidation; the officers did not draw their guns, nor did they deceive or intimidate Defendant into agreeing to the search; and Defendant was neither handcuffed or asked to sit in the back of the patrol car. The Eleventh Circuit has found consent voluntary in situations with far more indications of potential coercion. See, e.g., Garcia, 890 F.2d at 362 (finding consent was voluntary even though fourteen law enforcement agents were present when the defendant was arrested and the defendant was handcuffed at the time he gave consent); United States v. Hidalgo, 7 F.3d 1566, 1571 (11th Cir. 1993) (concluding consent was voluntary even though the defendant had been "arrested by SWAT team members who broke into his home in the early morning, woke him, and forced him to the ground at gunpoint"); United States v. Espinosa-Orlando, 704 F.2d 507, 510, 513 (11th Cir.1983) (concluding consent was voluntary after four officers had drawn their weapons, asked the defendant to step away from his car, told him to lie on the grass, and asked for consent while he was on the ground and one officer still had his weapon drawn). Accordingly, the Court finds the first factor weighs in favor of finding the consent voluntary.

The next factor, the extent of the person's cooperation with the officers, also weighs in favor of finding Defendant's consent voluntary. Throughout the entire

encounter, Defendant was very cooperative with the officers.  He told the officers about his upcoming plans to attend the Super Bowl and joked with them about his height. Additionally, Defendant willingly returned to speak further with Sergeant Sharpe after he had received the warning and his license.  When asked if he would permit the officer's to search the car, Defendant responded that he did not care.  Sergeant Sharpe double-checked by repeating, "You don't care?" and Defendant confirmed that he did not care if Sergeant Sharpe searched the car.  Moreover, at no time did Defendant ask the officers to stop the search.

The next factor is the person's awareness of his right to refuse consent. Defendant argues that by ignoring his statement that he wanted to get home as soon as possible, Sergeant Sharpe gave Defendant the impression that he did not have an option to refuse to consent.  "While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent." <u>Purcell</u>, 236 F.3d at 1281–82 (quoting <u>Schneckloth</u>, 412 U.S. at 227, 93 S.Ct. 2041).  Accordingly, even if Defendant honestly did not know of his right to refuse consent, that alone, is insufficient to render his consent involuntary.

Finally, the last two factors, the person's education and intelligence and the person's belief that no incriminating evidence will be found, are both neutral.  There was no evidence presented regarding Defendant's education and intelligence, although in the video, Defendant appeared reasonably intelligent and seemed to fully understand everything that was being discussed.  As for his belief that no incriminating evidence

would be found, there was no evidence to influence the Court's decision either way.

Therefore, based on the totality of the circumstances, the Court finds Defendant's

consent was voluntarily provided.

**C.     Did Defendant have Authority to Consent to the Search?**

Defendant's final argument in support of suppression is that because he did not

own the vehicle, he lacked authority to consent to the search.  This argument is without

merit.  "A third party who has 'common authority over or other sufficient relationship to

the premises or effects sought to be inspected' may give valid consent to search an

area."  United States v. Harris, 526 F.3d 1334, 1339 (11th Cir. 2008) (quoting United

States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 993 (1974)).  In Matlock the

Supreme Court determined that a third party's consent is valid "if he has mutual use of

the property, with joint access to or control of the area for most purposes."  Harris, 526

F.3d at 1339 (citing Matlock, 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7).  Matlock dealt

with the search of a home, however, the Eleventh Circuit has extended the Matlock

rationale to consensual vehicle searches.  See United States v. Dunkley, 911 F.2d 522,

525-26 (11th Cir. 1990).  In Dunkley, the driver of the vehicle at issue, a rental car, was

not the individual to whom the car was rented.  Instead, the car was rented by the wife

of one of the passengers, Mr. Baker.  The wife gave her husband, Baker, permission to

drive the car.  Baker, in turn, gave permission to the driver, Mr. Brown.  Dunkley, 911

F.2d at 525.  During a traffic stop, the driver, Brown, consented to a search of the

vehicle.  The court found he had authority to do so because "even if the owner/lessee

[of the car] is present as a passenger, the driver of a vehicle has some amount of joint

access to the vehicle, and, in fact, the driver has immediate control over the vehicle."

Id. at 526.  Similarly, in the instant case, Defendant contends the vehicle belonged to

Cardona's father and Cardona gave Defendant permission to drive the car.  Defendant,

as the driver, had immediate control over the vehicle and both Defendant and Cardona

had authority to consent to a search of the vehicle.  See United States v. Zapata, 180

F.3d 1237, 1241 (11th Cir. 1999) (holding that both the  passenger, who was the lessee

of the vehicle, and the driver had authority to consent to search of vehicle).

In sum, the Court finds the stop and search of the vehicle did not violate

Defendant's Fourth Amendment rights.  Accordingly, after due consideration, it is

**RECOMMENDED**:

Defendant's Motion to Suppress (Doc. 28) be **DENIED**.

**DONE AND ENTERED** at Jacksonville, Florida this   16th   day of November,

2012.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record